DA 10-0406

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 199

BURLINGTON RESOURCES OIL &
GAS COMPANY, LP,

   Plaintiff and Appellee,

 v.

LANG AND SONS INCORPORATED,
A/K/A LANG AND SONS, INC.,

   Defendant and Appellant.

APPEAL FROM: District Court of the Sixteenth Judicial District,
       In and For the County of Fallon, Cause No. DV 2008-33
       Honorable Joe L. Hegel, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

      Albert R. Batterman, Batterman Law Offices, P.C., Baker, Montana
      Richard W. Heineman, Attorney at Law, Wibaux, Montana

   For Appellee:

      Jeffery J. Oven, Matthew S. Brahana, Crowley Fleck, PLLP, Billings,
      Montana

           Submitted on Briefs: June 22, 2011
             Decided: August 17, 2011

Filed:

    _____
          Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Lang and Sons, Incorporated (Lang) owns and operates a cattle ranch in Fallon County.  Burlington Resources Oil & Gas Company (Burlington) leases the rights to oil and gas beneath Lang's surface estate.  Lang appeals from the findings of fact, conclusions of law, and order of the Sixteenth Judicial District Court, Fallon County, determining that Burlington had no obligation to compensate separately Lang for injecting wastewater into pore space beneath a well on Lang's property.  We affirm.

¶2     We restate the issues on appeal as follows:

¶3     *Did the District Court correctly conclude that Burlington could dispose of wastewater in a well on Lang's property without paying Lang separate compensation for use of the pore space beneath the well?*

¶4     *Did the District Court incorrectly refuse to defer to witnesses employed by the Montana Board of Oil and Gas Conservation in interpreting the Surface Owner Damage and Disruption Compensation Act?*

FACTUAL AND PROCEDURAL BACKGROUND

¶5     Burlington produces oil through its operation of the 24,609-acre East Lookout Butte Unit (ELOB) in Fallon County.  The surface estate owned by Lang falls within the boundaries of the ELOB.  Burlington reinstated use of an abandoned well on Lang's property in 2008 for the disposal of wastewater produced in the ELOB operations.  Lang asked Burlington to cease development of the wastewater disposal system.

2

¶6    Burlington filed a complaint with the District Court to compel access to Lang's property. Lang counterclaimed that it had a right to compensation for use of the pore space beneath the abandoned well. The District Court held a two day bench trial. The court concluded that Lang had failed to prove entitlement to damages under the Surface Owner Damage and Disruption Compensation Act (SODDCA), §§ 82-10-501 to -511, MCA. The court also concluded that Lang had not identified any common law or "other" right to separate compensation for Burlington's use of the pore space. Lang appeals.

¶7    Lang purchased the surface estate of the subject property from Frederic Votruba on April 10, 2003. Votruba reserved to himself all minerals lying beneath the surface of the property and the rights of removal. Votruba had executed an oil and gas lease (Votruba Lease) in 1992 with Burlington's predecessor, Meridian Oil.

¶8    The Votruba Lease granted Meridian Oil the right to use the surface estate as necessary in oil and gas operations. The District Court determined that Votruba had transferred use of the subterranean pore space and the right to unitize the subject surface lands when he executed the Votruba Lease in 1992. The Votruba Lease remained in effect at the time of trial.

¶9    Meridian drilled a well identified as #42-25 into the Red River Formation from Votruba's surface property in 1993. The Red River Formation comprises an oil field that lies between 8,964 feet and 9,240 feet below the surface measured from the Kelly Bushing elevation of 3004 feet above sea level. Meridian compensated Votruba for placing the #42-

25 pad site and connected pipeline on his property. The well produced oil until 1995 when it lost pressure. Meridian plugged #42-25 in 1995.

¶10 Burlington petitioned the Montana Board of Oil and Gas Conservation (MBOGC) in 1995 to unitize the Red River Formation into the ELOB so that it could extract additional oil and gas with secondary recovery efforts. Unitization required 80% of the owners of mineral interests inside the proposed ELOB to combine their individual mineral rights into a unit that could be operated jointly. Section 82-11-207, MCA (1995). The producers divide proceeds from the unit operation per share among the individual owners of the mineral interest. Section 82-11-202, MCA. Lang's three individual shareholders each received approximately $78,000 as royalty payments in 2008 for their interest in the ELOB.

¶11 Burlington developed a Unit Plan for the ELOB. MBOGC approved unitization of the Red River Formation in 1995. The Unit Plan granted Burlington the "right to use as much of the surface of the land within the Unit Area as may be reasonably necessary for the operation and the development of the Unit Area." The Unit Plan further incorporated SODDCA for determination of any damages to surface property.

¶12 Unitization of the Red River Formation allowed Burlington to use secondary recovery techniques to extract oil from the Red River Formation. Burlington injected water into the Red River Formation to raise its pressure in order to drive oil to wellheads. Burlington began extracting water from the Dakota and Swift Formations through #42-25 in 1997 to inject into the Red River Formation. The Dakota and Swift Formations are non-unitized geologic areas beneath #42-25 that fall within the boundaries of Lang's surface estate.

4

¶13    The water injected by Burlington into the Red River Formation increased oil production, but also caused additional water taken up at the wellheads.  Burlington produced about three barrels of water for each barrel of oil in 2009 and 2010.  Burlington pumped this wastewater into disposal wells.

¶14    Burlington applied on February 26, 2003, for permission from MBOGC to convert #42-25 into a wastewater disposal well.  MBOGC approved the application on May 15, 2003. Burlington notified Lang in 2008 of its intent to reconstitute #42-25.  This change to #42-25 would require Burlington to lay some new pipe to the well and develop a pumping station.  Burlington offered Lang $2,600 as SODDCA damages for these surface disruptions.  Lang rejected the offer.  Burlington began construction on August 5, 2008.  Lang approached Burlington's crew and asked them to stop working and leave the property.

¶15    Burlington initiated these proceedings to determine its right to use and access #42-25 and to determine the amount owed to Lang for the surface developments on Lang's property.  Lang counterclaimed with a trespass claim and sought separate compensation for Burlington's use of the well.  The court entered a stipulation temporarily enjoining Lang from interfering with Burlington's development and use of #42-25.  Burlington began disposing wastewater into #42-25 as of January 2009.  Burlington had disposed of more than two million barrels of wastewater from approximately 150 ELOB wells into #42-25 at the time of trial.

¶16    The District Court determined that disposal of wastewater in #42-25 constituted a reasonably necessary production activity within the unitized Red River Formation.  The

5

court concluded that Lang had failed to identify any statutory or common law right to receive separate compensation for Burlington's injection of wastewater into the pore space beneath #42-25. The court granted Lang $5,500 in SODDCA damages for Burlington's development of the pipeline and pumping station on the surface estate of Lang's property.

## STANDARD OF REVIEW

¶17 We review the factual findings of a district court sitting without a jury to determine whether they are clearly erroneous. *Eldredge v. Asarco Inc.,* 2011 MT 80, ¶ 30, 360 Mont. 112, 252 P.3d 182. A district court's findings are clearly erroneous if they are not supported by substantial evidence, if the district court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Id.* We review the evidence in the light most favorable to the prevailing party when determining whether substantial credible evidence supports the district court's findings. *Id.* We review for correctness a district court's conclusions of law. *Id.*

## DISCUSSION

¶18 *Did the District Court correctly conclude that Burlington could dispose of wastewater in a well on Lang's property without paying Lang separate compensation for use of the pore space beneath the well?*

¶19     Lang argues that the pore space of the Swift and Dakota Formations below #42-25 belongs to his surface estate rather than to the mineral estate leased by Burlington.  Lang seeks separate compensation from Burlington for its use of this pore space.  We first consider who owns the pore space.

¶20     We analyze the deeds and severance documents to determine who owns the pore space beneath #42-25.  Votruba owned title to the subject land in fee simple before 1992.  Votruba's ownership entitled him to everything permanently situated beneath or above the surface of the land.  Section 70-16-101, MCA.

¶21     Votruba entered an oil and gas lease with Meridian in 1992.  The Votruba Lease granted Meridian the "exclusive right for the purpose of mining, exploring by geophysical and other methods, and operating for the producing therefrom oil and all gas."  The Votruba Lease further granted Meridian the right "to pool or unitize" the leasehold estate and the mineral estate with other land or leases in the immediate vicinity "for the production of oil and gas."

¶22     MBOGC and 80% of all the mineral interest owners within the ELOB agreed to unitization of the Red River Formation in 1995.  The Unit Plan governing the ELOB granted Burlington the "right to use as much of the surface of the land within the Unit Area as may be reasonably necessary for the operation and the development of the Unit Area."  The Unit Plan granted Burlington the "right to use the unit surface, including roads, rights-of-way, easements, and surfaces leases and facilities, where necessary to conduct unit operations."

7

The Unit Plan provided that damages to the surface estate would be governed according to SODDCA. The Unit Plan contains no reference to ownership of pore space.

¶23 Votruba's fee simple estate entitled him to everything permanently situated beneath or above the surface of the land. Section 70-16-101, MCA. When Votruba sold the property to Lang in 2003, he reserved to himself only the right to "all of the coal, oil, gas, and other minerals in and under" the surface lands as well as the rights of exploration, mining, and removal. Lang obtained by the 2003 deed all rights to the subject property not reserved to Votruba. The 2003 deed did not reserve to Votruba ownership of the pore space or other non-mineral materials. The 2003 deed reserved only the minerals and the rights of exploration, mining, and removal.

¶24 Nothing in the Votruba Lease or the Unit Plan contradicts the extent of the ownership interest transferred to Lang by the 2003 deed. The pore space beneath Lang's property belongs to Lang's surface estate in the same manner that all the non-mineral material beneath the physical boundaries of Lang's property belongs to Lang's surface estate. *See Moser v. U.S. Steel Corp.*, 676 S.W.2d 99, 102 (Tex. 1984); *Emeny v. U.S.*, 412 F.2d 1319 (Ct. Cl. 1969); *Humble Oil & Refining Co. v. West,* 508 S.W.2d 812, 815 (Tex. 1974); *Cassinos v. Union Oil Co.*, 14 Cal. App. 4th 1770, 1782-83 (Cal App. 2nd Dist. 1993).

¶25 This conclusion does not end our inquiry. Burlington's interest in the mineral estate acquired through the 1992 lease provides more than the right to the minerals themselves. The 1992 lease also provides Burlington with the right to use Lang's estate to facilitate the removal of the minerals.

¶26 Montana law permits the owner of a dominant mineral estate to use reasonably the surface estate in the production of the mineral. *Hunter v. Rosebud Co.,* 240 Mont. 194, 198, 783 P.2d 927, 929 (1989); *Hurley v. N. Pac. Ry.,* 153 Mont. 199, 202-03, 455 P.2d 321, 323 (1969). The Unit Plan also granted Burlington a right to use Lang's surface estate where necessary to conduct unit operations, subject to SODDCA damages. The District Court concluded that Burlington's disposal of wastewater into #42-25 constituted a reasonable use necessary for the production of oil within the ELOB. Lang agrees that Burlington's use was reasonable. Lang argues, however, that SODDCA and the common law require Burlington to pay separate compensation for use of the pore space.

¶27 Lang argues first that SODDCA requires Burlington to pay a per barrel fee to dispose of wastewater into the pore space. SODDCA requires Burlington to pay Lang for "loss of agricultural production and income, lost land value, and lost value of improvements" caused by Burlington's oil and gas operations. Section 82-10-504(1)(a), MCA. The District Court determined that Lang had failed to provide evidence that Burlington's use of the pore space affected Lang's interest in the land value, agricultural production, or value to improvements, as set forth under SODDCA.

¶28 Lang conceded that use of the pore space in the Dakota and Swift Formations did not affect its agricultural production and income. Lang provided no evidence that injecting wastewater into the pore space lessened the value of the land. Lang admitted that it had not lost value in improvements to the land. Finally, Lang offered no evidence that the pore space underlying its land had been degraded, damaged, devalued, or otherwise consumed by

9

Burlington's use of the pore space. The District Court correctly concluded that Lang had failed to offer evidence of separate compensable damages under the elements specifically enumerated in SODDCA.

¶29    Burlington hired George Luther to appraise damages to Lang's property. Luther has over 26 years of appraisal experience and has appraised over 1,000 properties. Luther had never valued, or heard of any other appraiser valuing, pore space. Luther testified that no demonstrable market exists for pore space. Luther opined that Burlington's development activities of the pipeline and pumping station in 2008 had caused $5,500 in SODDCA damages to the surface of Lang's property. Lang offered no separate expert appraisal of damages. Lang agreed that Luther's calculations constituted a fair estimate of lost land value under SODDCA.

¶30    Lang insisted, however, that § 82-10-501(2)(c), MCA, requires that a landowner be made whole for all impacts upon the surface estate. Section 82-10-501(2)(c), MCA, provides the purpose statement for SODDCA. It provides that "owners of the surface estate should be justly compensated for use of their property and interference with the use of their property due to oil and gas development." Section 82-10-501(2)(c), MCA. The District Court concluded that the more specific provision for damages at § 82-10-504(1)(a), MCA, controlled over the broad purpose statement in § 82-10-501, MCA.

¶31    We agree, in this instance, that Lang's broad "made whole" interpretation of § 82-10-501(2)(c), MCA, could render meaningless the more explicit provision of damages contained in § 82-10-504(1)(a), MCA. We recognize that the provision authorizing compensation for

10

"lost land value" under § 82-10-504(1)(a), MCA, could encompass damage sustained by a surface estate owner for the use of pore space. Lang made no claim for "lost land value."

¶32 Lang instead claimed a right to separate compensation for Burlington's use of the pore space. Lang points to testimony from seven witnesses before the District Court who testified that other landowners have received a fee for wastewater disposal as a matter of industry custom. SODDCA sets forth no element of compensation to landowners for the use of pore space according to industry custom. SODDCA requires compensation only for "loss of agricultural production and income, lost land value, and lost value of improvements." Lang failed to offer evidence of losses to the surface estate compensable under SODDCA.

¶33 Lang raised a trespass claim in the District Court. Section 82-10-511, MCA, provides that SODDCA does not preclude Lang from seeking other legal remedies. The District Court concluded that Lang had "not identified any common law or 'other' right to compensation." We need not consider the viability of any trespass or other common law claims potentially available to Lang as Lang has not explained its trespass claim or other common law claim on appeal. Lang argues that the common law supports its right to compensation, but fails to provide this Court with authority to support its argument. Lang cites only to §§ 82-10-501(2)(c) and -504(1)(a), MCA, as authority for the argument that a landowner can recover compensation for use of the landowner's surface estate. We already have determined that Lang failed to establish that it was due separate compensation under those provisions of SODDCA and the facts of this case.

11

¶34 *Did the District Court incorrectly refuse to defer to witnesses employed by the Montana Board of Oil and Gas Conservation in interpreting the Surface Owner Damage and Disruption Compensation Act?*

¶35 Lang argues that the District Court should have deferred to the opinion of two witnesses employed by the MBOGC whom Lang deposed before trial. The witnesses testified that Burlington should have compensated Lang for use of the pore space based on their experience in the oil industry and based on their interpretation of the relevant statutes. Lang equates the opinions of these two witnesses with an agency's interpretation of a statute.

¶36 This Court generally grants deference to an agency's interpretation of a statute. *See e.g. Lewis v. B & B Pawnbrokers, Inc.,* 1998 MT 302, ¶ 43, 292 Mont. 82, 968 P.2d 1145. The witnesses who provided their opinions here, however, provided opinions in their individual capacities. Their expert opinion does not equate with an agency's interpretation of a statute. Lang cites no authority for the proposition that we should defer to a witness's interpretation of the statute, expert or otherwise, merely because the witness works for an administrative agency. We decline to search for any such authority.

¶37 Affirmed.

/S/ BRIAN MORRIS


We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT

12

/S/ JIM RICE
/S/ JAMES C. NELSON