**2017 ND 169**

**Randall MOSSER, Douglas Mosser,
Marilyn Koon, and Jayne
Harkin, Plaintiffs**

**v.**

**DENBURY RESOURCES, INC.,
and Denbury Onshore,
LLC, Defendants**

**No. 20160379**

Supreme Court of North Dakota.

Filed 7/12/2017

Stephen D. Easton (argued), Laramie, WY, and Christina M. Wenko (appeared), Dickinson, ND, for plaintiffs.

Amy L. De Kok (argued) and Lawrence Bender (on brief), Bismarck, ND, for defendants.

Kapsner, Justice.

[¶ 1] Under N.D.R.App.P. 47, the magistrate judge for the United States District Court for North Dakota certified seven questions to this Court involving a surface owner's right to recover compensation under N.D.C.C. ch. 38–11.1 for a mineral developer's use of pore space beneath the surface of the surface owner's estate for saltwater disposal. We conclude that under N.D.C.C. § 38–11.1–04 a mineral developer may be liable to a surface owner for saltwater disposal into pore space, and we answer the certified questions accordingly.

I

[¶ 2] Randall Mosser, Douglas Mosser, Marilyn Koon, and Jayne Harkin ("plaintiffs") own a surface estate in a quarter section of land in Billings County. When the plaintiffs acquired their surface estate, it was subject to a 1977 oil and gas lease granted by the plaintiffs' predecessors-in-interest, who had owned both the surface and mineral estate in several tracts of land included in the lease. The 1977 lease remains in effect as a result of continuous production from oil and gas wells on the leased acreage.

[¶ 3] In 2003, the Industrial Commission approved a plan for unitization of several tracts of land in Billings County, including the plaintiffs' surface estate, and Denbury Resources, Inc., through its subsidiary Denbury Onshore, LLC, is the current operator of the unit. Denbury is the operator of a well located on the plaintiffs' surface estate, which was an oil and gas well from 1979 to 2006 and was later permitted by the Industrial Commission as an injection well for saltwater disposal into the pore space beneath the surface. The permit authorized Denbury to dispose of production water from other wells at a depth 5,340 to 5,496 feet below the plaintiffs' surface estate. Denbury has used the well for saltwater disposal since September 2011 and, according to the plaintiffs, Denbury had disposed of about 3.2 million barrels of saltwater into the pore space through March 2016.

[¶ 4] The plaintiffs sued Denbury for saltwater disposal into their pore space, alleging claims for nuisance, for trespass and for damages under the Oil and Gas Production Damage Compensation Act in N.D.C.C. ch. 38–11.1. The plaintiffs moved for partial summary judgment on liability, claiming Denbury's liability was clear and the only issue for trial was the amount of their damages. Denbury moved for summary judgment dismissal of the plaintiffs' action, contending it had the right to dispose of saltwater into the plaintiffs' pore space without providing them compensation. The federal magistrate judge denied the parties' motions, but ruled the plaintiffs owned the pore space beneath their surface estate and Denbury may be liable for saltwater disposal into their pore space under N.D.C.C. ch. 38–11.1. *Mosser v. Denbury Res., Inc.*, 112 F.Supp.3d 906 (D. N.D. 2015).

[¶ 5] The parties thereafter agreed Denbury has the right to dispose of saltwater generated from the unit through the permitted well into the pore space beneath the plaintiffs' surface estate under the mineral lease executed by the plaintiffs'

predecessors-in-interest. The parties also agreed the only remaining unresolved issue in the plaintiffs' complaint is their statutory claim for damages under N.D.C.C. ch. 38–11.1.

[¶ 6] Denbury filed a second motion for summary judgment, seeking dismissal of the plaintiffs' statutory claim for damages on the ground they failed to proffer any evidence to establish that they were currently using the pore space beneath their surface estate, that they had any concrete plans to do so in the near future, or that their property had diminished in value. The federal magistrate judge deferred ruling on that motion and certified seven questions to this Court involving the plaintiffs' right to recover compensation for Denbury's disposal of saltwater into the pore space beneath the plaintiffs' surface estate under N.D.C.C. ch. 38–11.1.

## II

[¶ 7] The plaintiffs generally argue that as owners of the surface estate, they own the pore space beneath the surface of that estate and Denbury's disposal of saltwater into their pore space entitles them to damages for the "lost use of and access to the surface owner's land" under N.D.C.C. § 38–11.1–04. Denbury initially argues some or all of the certified questions should not be answered because the federal court has already answered some of the questions, there is sufficient guidance in existing law for the federal court to answer some or all the questions, and the answer to some or all of the questions is unnecessary or not determinative of issues currently before the federal court. Denbury alternatively argues the use of the term "land" in N.D.C.C. § 38–11.1–04 does not include "pore space" and the statute contemplates damages only for a mineral developer's use of the surface estate and does not contemplate damages for a devel-oper's use of pore space beneath a surface estate. Denbury also argues if N.D.C.C. § 38–11.1–04 authorizes compensation for saltwater disposal into pore space beneath a surface estate, the plaintiffs' proffered evidence in this case does not establish damages.

## III

[¶ 8] Under N.D.R.App.P. 47, this Court's authority to answer a properly certified question of law from a federal district court is discretionary. See N.D.R.App.P. 47 (explanatory note). Rule 47(a), N.D.R.App.P., authorizes certification of questions to this Court by federal courts and by other state appellate courts when the legal issue "may be determinative" of the proceeding pending in that court and "it appears to the certifying court there is no controlling precedent in the decisions" of this Court. In contrast, certified questions from a North Dakota court to this Court must meet the more stringent requirement that the legal question "is determinative" of the proceeding. N.D.R.App.P. 47.1(a)(1)(A).

[¶ 9] In *Bornsen v. Pragotrade, LLC*, 2011 ND 183, ¶ 7, 804 N.W.2d 55 (quoting *McKenzie Cty. v. Hodel*, 467 N.W.2d 701, 704 (N.D. 1991)), this Court discussed the reason for the disparate treatment of certified questions:

"A less stringent standard will be applied, however, in exercising our discretion to answer certified questions from courts of other jurisdictions under Rule 47, N.D.R.App.P. There is a logical policy basis for this apparent dichotomy. If we decline to answer questions certified by a court of this State, the parties may, as a matter of right, appeal from the final judgment or order of the trial court and obtain resolution of the relevant questions of law in this court. Thus, in the interest of judicial economy and or-

derly procedure, we will only answer certified questions which are dispositive of the issues in the case. However, if we decline to respond to questions certified by a federal court or court of another state, we leave that court to speculate upon unsettled issues of North Dakota law, and the parties have no recourse in the appellate courts of this State."

[¶ 10] Some courts have recognized that certification is not appropriate to answer questions already decided by the federal district court. *See Jung v. Gen. Cas. Co.*, 651 F.3d 796, 801 (8th Cir. 2011) (stating federal courts have duty to address matters of state law even when that law is unsettled, federal courts generally do not allow certification after case has been decided, and appellate court reviews denial of certification by federal district court under abuse-of-discretion standard); *Rural Water Sys. v. City of Sioux Ctr.*, 202 F.3d 1035, 1037 n.6 (8th Cir. 2000) (affirming denial of motion to certify question to state supreme court and stating parties should be discouraged from seeking certification after adverse judgment rendered by district court); *Cray v. Deloitte Haskins & Sells*, 925 P.2d 60, 62 (Okla. 1996) (declining state appellate review of federal district court's ruling on liability under guise of certified question where district court had finalized its determination on liability).

■ [¶ 11] Here, the federal magistrate judge recognized it had affirmatively answered the first two certified questions about liability and had addressed the third certified question about damages to a limited extent, but explained its ruling could be revisited because a final judgment had not been entered. The court said there were two reasons to certify the first two questions notwithstanding the fact the court had addressed those questions:

First, it would be unfair to ask the North Dakota Supreme Court to answer the remaining questions without having afforded it the opportunity to consider the threshold issues presented by the first two questions. Second (and to be frank), there is the concern the North Dakota Supreme Court might decline to address the remaining questions in the absence of it having ruled on the first two on the grounds that, from its perspective, any rulings on the remaining questions might be viewed as advisory. The court later explained:

The first two certified question[s] are clearly determinative of whether plaintiffs have any statutory claim for compensation pursuant to N.D.C.C. § 38–11.1–04 for Denbury's use of the pore space underlying their quarter section. The same is likely true for the remaining questions. In particular, questions three through six will have to be addressed in some fashion in ruling on Denbury's second motion for summary judgment as well as when instructing the jury on what the governing law is. Question seven will also likely need to be resolved at least by the time the court instructs the jury with respect to the scope of the recoverable damages if not by an earlier motion in limine. In any event, the "may be determinative" requirement for certification from federal courts under N.D.R.App.P. 47(a)(1) is easily satisfied for all of the certified questions.

[¶ 12] Although the federal magistrate judge has ruled on the first two certified questions, the court explained it has not rendered a final decision on those questions of unsettled state law. This Court is the final arbitrator of unsettled questions of state law, and the first two questions about liability under our state statutes are posited such that they may be determinative of the proceeding. Moreover, there is no controlling precedent on those ques-

tions. Accordingly, we exercise our discretion to answer the first two certified questions. However, we consider the remaining certified questions about damages under N.D.C.C. § 38–11.1–04 in the context of whether an adequate factual record has been developed for this Court to exercise its discretion to answer those questions. *See Bornsen*, 2011 ND 183, ¶¶ 23–27, 804 N.W.2d 55 (Kapsner, J., dissenting). *See also Cray*, 925 P.2d at 62 (recognizing other state courts have declined to answer certified questions that would not be determinative of the action, that were based on conflicting facts, or that had already been decided by the state appellate court).

### IV

[¶ 13] Before addressing the certified questions, however, we generally describe our rules for interpreting statutes. Statutory interpretation is a question of law. *In re Estate of Hogen*, 2015 ND 125, ¶ 12, 863 N.W.2d 876. The primary objective in interpreting statutes is to determine legislative intent, and that intent initially must be sought from the language of the statute. *Id.* Statutory provisions "are to be construed liberally, with a view to effecting its objects and to promoting justice." N.D.C.C. § 1–02–01. Statutory provisions are given their plain, ordinary, and commonly understood meaning, unless they are specifically defined or a contrary intention plainly appears. N.D.C.C. § 1–02–02. Words and phrases are construed according to the context in which they are used and technical words defined by statute must be construed according to the appropriate definition. N.D.C.C. § 1–02–03. Statutes are construed as a whole and harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07. Statutes are construed to give effect to all of their provisions so no part of the statute is rendered inoperative or superfluous. N.D.C.C. § 1–02–38(2) and (4). "When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. 1–02–05. If the language of a statute is ambiguous or of doubtful meaning, however, a court may resort to extrinsic aids to determine the intention of the legislation, including the object sought to be obtained, the circumstances under which the statute was enacted and the legislative history. N.D.C.C. § 1–02–39. "A statute is ambiguous if it is susceptible to differing but rational meanings." *Western Gas Res., Inc. v. Heitkamp*, 489 N.W.2d 869, 872 (N.D. 1992).

### V

#### A

[¶ 14] The first certified question involves ownership of pore space beneath a surface estate, a predicate to potential liability in this case, and provides:

1. In North Dakota, does the owner of the surface estate own the pore space deep below the surface, absent some conveyance of the pore space to a third party and even when the mineral estate has been severed from the surface estate?

[¶ 15] Chapter 47–31, N.D.C.C., describes subsurface pore space policy in North Dakota and says "'pore space' means a cavity or void, whether natural or artificially created, in a subsurface sedimentary stratum." N.D.C.C. § 47–31–02. *See also* N.D.C.C. § 38–22–02(5) (defining pore space for carbon dioxide underground storage). Under N.D.C.C. § 47–31–03, the "[t]itle to pore space in all strata underlying the surface of lands and waters is vested in the owner of the overlying surface estate." The conveyance of title to the surface of real property conveys the pore space in all strata underlying the surface and pore space may not be severed from

the title of the overlying surface of real property except by transactions before April 9, 2009. *See* N.D.C.C. §§ 47–31–04, 47–31–05, and 47–31–07.

[¶ 16] Chapter 47–31, N.D.C.C., was enacted in 2009 N.D. Sess. Laws ch. 401 in conjunction with provisions for carbon dioxide underground storage in 2009 N.D. Sess. Laws ch. 318. The legislation codifying pore space policy was intended to confirm that surface owners own the pore space under their surface estate. *See Hearing on S.B. 2139 Before Senate Natural Resources Comm.*, 61st N.D. Legis. Sess. (Jan. 16, 2009) (written testimony of Assistant Attorney General Charles Carvell). That testimony is consistent with N.D.C.C. § 47–01–12, N.D.C.C., which dates back to 1877 Civil Code for the Dakota Territory, and states the "owner of land in fee has the right to the surface and to everything permanently situated beneath or above it."

[¶ 17] When the foregoing statutory provisions are construed together, we agree with the federal magistrate judge and the parties that the owner of a surface estate owns the underlying pore space absent a conveyance of the pore space to a third party before April 9, 2009. *See Mosser*, 112 F.Supp.3d at 918–19 (stating parties did not seriously contest that a surface owner owns the subsurface pore space under N.D.C.C. § 47–01–12 and N.D.C.C. ch. 47–31). We therefore answer "yes" to the first certified question.

### B

[¶ 18] The second certified question involves whether N.D.C.C. ch. 38–11.1 applies to a mineral developer's use of "pore space" for a saltwater injection well and provides:

2. If the answer to the first certified question is yes, do the provisions of N.D.C.C. § 38–11.1–04 that require compensation be paid to a surface owner for "lost land value" and "lost use of and access to" a surface owner's land extend to a mineral developer's use of the subsurface pore space for the disposal of saltwater generated as a result of drilling operations?

[¶ 19] The plaintiffs argue Denbury's disposal of saltwater into their pore space entitles them to damages for the "lost use of and access to the surface owner's land" under N.D.C.C. § 38–11.1–04. Denbury responds a surface owner's right to damages under N.D.C.C. § 38–11.1–04 does not extend to a mineral developer's use of the pore space, because the word "land" in N.D.C.C. ch. 38–11.1 has the meaning ascribed in N.D.C.C. § 47–01–04 as "the solid material of the earth" and does not include pore space, which is defined as a "cavity or void" under N.D.C.C. § 47–31–02 and not "solid material."

[¶ 20] Section 38–11.1–04, N.D.C.C., requires a mineral developer to pay a surface owner certain damage and disruption payments and provides:

The mineral developer shall pay the surface owner a sum of money equal to the amount of damages sustained by the surface owner and the surface owner's tenant, if any, for lost land value, lost use of and access to the surface owner's land, and lost value of improvements caused by drilling operations. The amount of damages may be determined by any formula mutually agreeable between the surface owner and the mineral developer. When determining damage and disruption payments, consideration must be given to the period of time during which the loss occurs and the surface owner must be compensated for harm caused by exploration only by a single sum payment. The payments con-

templated by this section only cover land directly affected by drilling operations. Payments under this section are intended to compensate the surface owner for damage and disruption; any reservation or assignment of such compensation apart from the surface estate except to a tenant of the surface estate is prohibited. In the absence of an agreement between the surface owner and a tenant as to the division of compensation payable under this section, the tenant is entitled to recover from the surface owner that portion of the compensation attributable to the tenant's share of the damages sustained.

[¶ 21] In enacting N.D.C.C. ch. 38–11.1, the legislature explicitly found that "[o]wners of the surface estate ... should be justly compensated for the injury to their persons or property and interference with the use of their property occasioned by oil and gas development." N.D.C.C. § 38–11.1–01(3). As relevant to the interpretation of that chapter, N.D.C.C. § 38–11.1–02 describes its purpose and rules for interpretation:

> It is the purpose of this chapter to provide the maximum amount of constitutionally permissible protection to surface owners and other persons from the undesirable effects of development of minerals. This chapter is to be interpreted in light of the legislative intent expressed herein. Sections 38–11.1–04 and 38–11.1–04.1 must be interpreted to benefit surface owners, regardless of whether the mineral estate was separated from the surface estate and regardless of who executed the document which gave the mineral developer the right to conduct drilling operations on the land. Sections 38–11.1–06 through 38–11.1–10 must be interpreted to benefit all persons.

[¶ 22] Chapter 38–11.1, N.D.C.C., does not define "land," but N.D.C.C. § 38–11.1–04 is part of legislation now requiring a mineral developer to pay a surface owner a sum of money equal to the amount of damages sustained by the surface owner "for lost land value, lost use of and access to the surface owner's land, and lost value of improvements caused by drilling operations." As originally enacted, the statute required a mineral developer to pay a surface owner for "loss of agricultural production and income, lost land value, and lost value of improvements caused by drilling operations." 1979 N.D. Sess. Laws ch. 396, § 4. In 1983, the legislature added the phrase "lost use of and access to the surface owner's land" to N.D.C.C. § 38–11.1–04. 1983 N.D. Sess. Laws ch. 407, § 2. The language adopted in 1983 is broader than the initial language in N.D.C.C. § 38–11.1–04. *See Hearing on SB 2319 Before Senate Natural Resources Comm.*, 48th N.D. Legis. Sess. (Jan. 28, 1983) (testimony of Lowell Ridgeway, North Dakota Petroleum Council stating language would add an additional burden on the mineral developer). In 2011, the legislature amended provisions in N.D.C.C. ch. 38–11.1, to move the language for loss of agricultural production and income from N.D.C.C. § 38–11.1–04 to N.D.C.C. § 38–11.1–08.1 and to retain the language for damages and disruption payments in N.D.C.C. § 38–11.1–04 for "lost land value, lost use of and access to the surface owner's land, and lost value of improvements caused by drilling operations." *See* 2011 N.D. Sess. Laws ch. 265, §§ 2 and 5.

[¶ 23] Here, the issue is whether the use of the term "land" in N.D.C.C. § 38–11.1–04 authorizes a surface owner to recover compensation for a mineral developer's use of "pore space" for saltwater disposal. The federal magistrate judge in this case and the federal district court in a separate lawsuit have concluded the term "land" in

N.D.C.C. § 38–11.1–04 encompasses "pore space" for purposes of statutory claims involving disposal of saltwater. *Mosser*, 112 F.Supp.3d at 920–23; *Fisher v. Cont'l Res., Inc.*, Case No. 1:13–cv–097, 2015 WL 11400124 at 4–5 (D. N.D. Oct. 8, 2015). In its certification order to this Court, the federal magistrate judge quoted the federal district court's conclusion that "land" encompasses "pore space":

Chapter 38–11.1 does not define land. Continental[, the mineral developer,] invites the Court to adopt the definition of land as set forth in Title 47 which provides "[l]and is the solid material of the earth, whatever may be the ingredients of which it is composed, whether soil, rock, or other substance." N.D.C.C. § 47–01–04. Continental focuses on the phrase "solid material of the earth" and notes pore space is defined as "a cavity or void, whether natural or artificially created, in a subsurface sedimentary stratum" in N.D.C.C. 47–31–02 in support of its argument to exclude the pore space from the meaning of the word "land" in Section 38–11.1–04.

This argument regarding the "solid material of the earth" was recently rejected in an opinion the Court finds persuasive. *See Mosser v. Denbury Res., Inc.*, 112 F.Supp.3d 906, 920–23 (D.N.D. 2015). In *Mosser*, the court held that the phrase "solid material of the earth" is "clearly a relative description in that all soil and gravel, as well as many rock formations, have some interstitial space, and there is no reason to believe that the reference to soil, rock, or other substance in Section 47–01–04 was meant to exclude the space encapsulated within that material." *Id.* In *Mosser*, the court further explained there is no indication the North Dakota Legislature meant to apply the definition of "land" found in Title 47 to Chapter 38–11.1, and the term land is subject to different meanings in different contexts. *Id.* For instance, one legal dictionary defines land as "1. An immovable and indestructible three-dimensional area consisting of a portion of the earth's surface, the space above and below the surface, and everything growing on or permanently affixed to it. 2. An estate or interest in real property." *Black's Law Dictionary* 881 (7th ed. 1999). It is this common three-dimensional concept of an estate in land that the Court finds best fits the context of the term land as used in Section 38–11.1–04.

An opinion from the Montana Supreme Court offers guidance as well. In *Burlington Res. Oil & Gas Co., LP v. Lang and Sons Inc.*, 361 Mont. 407, 259 P.3d 766 (2011), the court was asked to decide whether Montana's Surface Owner Damage and Disruption Compensation Act ("SODDCA") required a mineral developer to pay compensation to the surface owner for use of the subsurface pore space for salt water disposal operations. While ultimately deciding the surface owner had failed to offer adequate proof of his damages and had not made a claim for "lost land value," the court acknowledged that the SODDCA provision authorizing compensation for "lost land value" "could encompass damage sustained by a surface estate owner for use of pore space." *Id.* at 771.

The express language of Section 38–11.1–04 requires compensation for the "lost use of and access to the surface owner's land." N.D.C.C. § 38–11.1–04 (emphasis added). North Dakota law is clear that "the owner of land in fee has the right to the surface and to everything permanently situated beneath or above it." N.D.C.C. § 47–01–12. Land is considered real property. N.D.C.C. § 47–01–03. Thus, in the absence of a severance of the mineral estate, or the

severance of the pore space estate made prior to April 9, 2009, the effective date of Chapter 47–31, a fee simple owner of land owns not only the surface, but all which lies beneath the land, including the minerals and the pore space. Pore space, which is no longer severable from the surface estate in North Dakota, is an estate in land much like the mineral estate. The North Dakota Legislature has irrevocably tied the pore space estate to the surface estate in Chapter 47–31. Chapter 47–31 makes clear that title to the pore space estate is vested in the owner of the surface estate, and severance of the pore space from the surface estate is prohibited. N.D.C.C. §§ 47–31–05 and 47–31–03. It would be illogical to conclude that the pore space is not a component of the land as that term is commonly understood and as it is used in Section 38–11.1–04. This finding is in keeping with the purpose of Chapter 38–11.1 which is to "provide the maximum amount of constitutionally permissible protection to surface owners and other persons from the undesirable effects of development of minerals" and the requirement that Section 38–11.1–04 "must be interpreted to benefit surface owners." N.D.C.C. § 38–11.1–02.

Accordingly, the Court finds as a matter of law that the term "land" as used in Section 38–11.1–04 encompasses the pore space. The Court further finds that the language and purpose of Chapter 38–11.1 are broad enough to encompass compensation for use of the surface owner's pore space as a component of the "surface owner's land" as provided in Section 38–11.1–04.

◼ [¶ 24] The legislature has not amended the relevant statutes since the 2015 interpretations of N.D.C.C. ch. 38–11.1 by the federal magistrate judge and the federal district court. When the provisions of N.D.C.C. §§ 38–11.1–04, 47–01–04, and 47–01–12 are read together, we agree with the interpretations by the federal magistrate judge and the federal district court that pore space is part of the surface owner's interest in the land for purposes of N.D.C.C. § 38–11.1–04. We conclude a surface owner may be entitled to compensation under N.D.C.C. § 38–11.1–04 for a mineral developer's use of the surface owner's subsurface pore space for disposal of saltwater generated as a result of drilling operations. We answer the second certified question "yes."

C

[¶ 25] The five remaining certified questions address evidentiary issues for a surface owner to be entitled to compensation under N.D.C.C. § 38–11.1–04 and provide:

3. If the answer to the second certified question is yes, is the ability to recover damages under N.D.C.C. § 38–11.1–04 limited to when the surface owner is currently using the pore space or when there is evidence that the surface owner is likely to make use of the pore space within the reasonably near future, either by personally using it or leasing it to another?

4. Are damages under N.D.C.C. § 38–11.1–04 for a mineral developer's use of subsurface pore space for disposal of saltwater recoverable only if the surface owner can prove a diminution in the market value of the affected property?

5. In order to recover damages for a mineral developer's use of subsurface pore space for the disposal of saltwater under N.D.C.C. § 38–11.1–04, must the surface owner prove some damage other than the mere occupancy or loss of access to the pore space, e.g., an interference

with the surface owner's actual use of the pore space or a concrete plan to do so in the reasonably near future or evidence of diminution in the market value of the property affected by the saltwater disposal?

6. Can a surface owner recover damages under N.D.C.C. § 38–11.1–04 for a mineral developer's use of the surface owner's pore space for the disposal of saltwater when the only evidence upon which to calculate damages is (1) proof of what is being paid to other surface owners for the use of their pore space for the disposal of saltwater on a per barrel basis (assuming the third party transactions being relied upon are "arms length" and fairly comparable); and (2) evidence of the number of barrels of injected saltwater that, more likely than not, is occupying the surface owner's pore space?

7. If a surface owner can recover damages under N.D.C.C. § 38–11.1–04 for a mineral developer's use of the surface owner's subsurface pore space based on an amount per barrel for barrels of saltwater injected into the subsurface, can the surface owner in the same action recover additional damages based on an estimate of how may more barrels of saltwater could be injected into the pore space if the surface owner is able to prove, more likely than not: (1) the mineral developer's disposal of saltwater has foreclosed the ability of the surface owner to make use of the remaining capacity in the formulation into which the saltwater is being injected; and (2) the remaining capacity of the formation into which the saltwater is being injected?

[¶ 26] The plaintiffs initially contend their evidence will establish more than "mere" occupancy of their pore space and they will provide other evidence of damages besides "only" proof of what mineral developers are paying for saltwater disposal.

[¶ 27] The federal magistrate judge's order for certification generally described the evidentiary background for the five remaining certified questions:

In this case, the only evidence of damage that plaintiffs will be offering is evidence that the saltwater being disposed of by Denbury is occupying their pore space and what others are paying to surface owners for subsurface disposal of saltwater. Denbury claims this is not enough to recover under § 38–11.1–04 if it applies. Denbury contends that there must be some evidence that plaintiffs were either using the pore space or, perhaps, had some concrete plans to do so in the near future. Further, even if actual or intended use is not required, Denbury contends that plaintiffs must at the very least proffer some evidence that their property has diminished in value. According to Denbury, in the absence of plaintiffs being able to prove any of these things (e.g., interference with an actual or intended use or, perhaps, loss of land value), plaintiffs have failed to prove that they have sustained damage within the meaning of the statute and their claim pursuant to § 38–11.1–04 must be dismissed.

Questions three through six go to whether plaintiffs can recover damages on a per barrel basis for the saltwater that plaintiffs can demonstrate is occupying their pore space based only on evidence of what others are paying surface owners for the disposal of saltwater or whether § 38–11.1–04 requires something more. If those questions are answered in manner that allows plaintiffs' claim to go forward, then question seven

goes to whether plaintiffs can also recover for pore space that Denbury has not yet utilized if plaintiffs can convince the factfinder that Denbury's disposal of saltwater has foreclosed their future use of that pore space.

[¶ 28] We consider these five certified questions based on the federal magistrate judge's explanation of the evidence and statement that questions three through six, in particular, will have to be addressed in some fashion in Denbury's pending motion for summary judgment. On this record, we conclude the answers to questions three through six may be determinative of this action and there is no controlling precedent on those issues in the decisions of this Court. *See* N.D.R.App.P. 47.

[¶ 29] The plain language of N.D.C.C. § 38–11.1–04 requires a mineral developer to pay a surface owner a sum of money equal to the amount of damages sustained by the surface owner for lost land value, lost use of and access to the surface owner's land, and lost value of improvements caused by drilling operations. The plain language of that statute is not limited to whether the owner of a surface estate is currently using or planning to use the pore space in the near future. Rather, the statutory language requires the mineral developer to pay the surface owner for "lost land value, lost use of and access to the surface owner's land, and lost value of improvements." That language is not limited to a diminution in market value of the owner of the surface estate's interest and includes a surface owner's lost use of and access to a surface owner's pore space at some time in the future regardless of the surface owner's current use or future plan for use of the pore space. That interpretation is consistent with the legislature's stated purpose for N.D.C.C. ch. 38–11.1 "to provide the maximum amount of constitutionally permissible protection to surface owners and other persons from the undesirable effects of development of minerals" and the legislature's separate rule of construction that N.D.C.C. § 38–11.1–04 "must be interpreted to benefit surface owners." N.D.C.C. § 38–11.1–02.

[¶ 30] Moreover, the plain language of N.D.C.C. § 38–11.1–04 does not preclude a surface owner from recovering what others may be paying to dispose of saltwater in pore space; rather, the price per barrel others are paying for saltwater disposal may provide some probative evidence of the amount a surface owner may be damaged for "lost use of and access to the surface owner's land" under N.D.C.C. § 38–11.1–04. We do not speculate on the extent of the evidence a surface owner may proffer to establish lost use of and access to a surface owner's land, because the probative effect and admissibility of proffered evidence is a matter for a trial court's discretion. *See* F.R.Ev. 401–403 and N.D.R.Ev. 401–403. Rather, for purposes of these certified questions, we conclude certified questions 3 through 6 may be determinative of this action and answer "no" to questions 3 through 5 and "yes" to question 6.

[¶ 31] In formulating question 7, however, the federal district court said it anticipated the plaintiffs will offer evidence that Denbury's saltwater disposal has foreclosed their ability to use or otherwise access the remaining pore space under their surface estate. The court's explanation indicates question 7 is based on Denbury's anticipated future conduct as well as potential regulatory or physical barriers to accessing any remaining pore space, none of which is certain to occur. We decline to speculate on what evidence might be used to show foreclosed access to remaining pore space, and we decline to answer question 7.

VI

[¶ 32] We answer the certified questions as delineated in this opinion.

[¶ 33] Carol Ronning Kapsner

Lisa Fair McEvers

Daniel J. Crothers

Jerod E. Tufte

Gerald W. VandeWalle, C.J.