# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 211

Allen Dominek and Arlen Dominek,                                        Plaintiffs

v.

Equinor Energy L.P., f/k/a and a/k/a Brigham
Oil & Gas L.P. and Statoil Oil and Gas L.P.;
and Grayson Mill Williston, LLC,                                        Defendants

## No. 20220088

Certified questions from the United States District Court for the District of North Dakota, the Honorable Daniel L. Hovland, District Judge.

CERTIFIED QUESTIONS ANSWERED IN PART AND UNANSWERED IN PART.

Opinion of the Court by McEvers, Justice.

Derrick L. Braaten, Bismarck, ND, for plaintiffs.

Lawrence Bender (argued) and Spencer D. Ptacek (appeared), Bismarck, ND, for defendants.

Paul J. Forster and Zachary R. Eiken, Bismarck, ND, for amicus curiae North Dakota Petroleum Counsel, Inc.

Joshua Swanson, Fargo, ND, for amicus curiae for Thurmon Andress, Melissa Sandefer, Julie Sandefer, Lisa Sandefer, Thomas Thompson and Robert Fulwiler.

Steven B. Nelson, Assistant Attorney General, Bismarck, ND, for amicus curiae North Dakota Industrial Commission.

James P. Parrot, Denver, CO, for amicus curiae Continental Resources, Inc.

**McEvers, Justice.**

[¶1] Under N.D.R.App.P. 47, the federal district court for the District of North Dakota has certified five questions regarding N.D.C.C. § 38-08-08(1) and North Dakota Industrial Commission pooling orders. The litigation before the federal court involves allocation of mineral royalties in the case of overlapping oil and gas spacing units. We answer the first question "no." We decline to answer the remaining questions.

I

[¶2] Allen and Arlen Dominek own oil and gas interests in Section 13 of Township 154 North, Range 102 West, which is located in Williams County. In 2011, the North Dakota Industrial Commission pooled the interests in Section 13 with the interests in Section 24 in a 1280-acre spacing unit (the "Underlying Spacing Unit"). In 2016, the Commission pooled the interests in Sections 11, 12, 13, and 14 in a 2560-acre spacing unit (the "Overlapping Spacing Unit). The figure below illustrates these two spacing units along with two other spacing units in the township.

| Sections 11 and 14 Spacing Unit | Section 12 Spacing Unit |
|---|---|
| 11 | 12 |
| | 640 base-spacing unit |
| 1280 base-spacing unit | Sections 13 and 24 Spacing Unit |
| 14 | 13 |
| | 1280 base-spacing unit |
| 23 | 24 |

The spacing units have drilling setbacks at their shared section lines to limit a well on one unit draining resources from the adjacent unit. The Overlapping Spacing Unit was created for the purpose of drilling a horizontal section line well to produce from the setback area. The figure below, provided by the

Domineks, illustrates the only well authorized for the Overlapping Spacing Unit—the Weisz 11-14 XE #1H. The Weisz well terminates in the southeast corner of Section 14. The Defendants (together "Equinor") operate the Weisz well.



[¶3]   The Domineks sued Equinor in federal district court to recover revenue proceeds from the Weisz well. The parties agree production from the Weisz well should be allocated equally to the four sections comprising the Overlapping Spacing Unit. Their disagreement is whether the 25% attributable to Section

13 should be shared with the interest owners in Section 24 given those sections are pooled in the Underlying Spacing Unit. Equinor moved for summary judgment arguing it is appropriate to do so (as shown in the figure below on the left). The Domineks filed a cross motion for summary judgment arguing it is not (as shown in the figure below on the right).

| | |
|---|---|
| Section 11<br>25% | Section 12<br>25% |
| Section 14<br>25% | Section 13<br>12.5% |
| Section 23<br>0% | Section 24<br>12.5% |

| | |
|---|---|
| Section 11<br>25% | Section 12<br>25% |
| Section 14<br>25% | Section 13<br>25% |
| Section 23<br>0% | Section 24<br>0% |

[¶4] In response to the motions, the federal district court certified five questions to this Court. The first question asks whether language from N.D.C.C. § 38-08-08(1) requires production from Section 13 to be allocated to Section 24. The relevant language states:

> Operations incident to the drilling of a well upon any portion of a spacing unit covered by a pooling order must be deemed, for all purposes, the conduct of such operations upon each separately owned tract in the drilling unit by the several owners thereof. That portion of the production allocated to each tract included in a spacing unit covered by a pooling order must, when produced, be deemed for all purposes to have been produced from such tract by a well drilled thereon.

N.D.C.C. § 38-08-08(1). The next two questions ask whether language included in the pooling orders for both the Underlying Spacing Unit and the Overlapping Spacing Unit either (1) requires or (2) prohibits allocation from Section 13 to Section 24. The pooling orders each state:

4

All owners of interests shall recover or receive, without unnecessary expense, their just and equitable share of production from the spacing unit in the proportion as their interest may appear in the spacing unit.

The last two questions ask whether language in the pooling order for the Overlapping Spacing Unit either (1) requires or (2) prohibits allocation from Section 13 to Section 24. The pooling order states:

This order is limited to pooling the spacing unit described above for the development and operation of such spacing unit by the horizontal well(s) authorized for such spacing unit by order of the Commission. This order does not modify, amend or alter previous pooling orders for other spacing units or require the reallocation of production allocated to separately owned tracts within any spacing unit by any existing pooling orders or any pooling agreements.

II

[¶5] This Court may answer a question of law certified by a foreign court if the question could be determinative of the proceeding and there is no controlling precedent. N.D.R.App.P. 47; *see also Blasi v. Bruin E&P Partners, LLC*, 2021 ND 86, ¶ 6, 959 N.W.2d 872. The standard for answering questions certified by a foreign court is less stringent than the standard for answering a question certified by a state district court, which requires the question be determinative. *See* N.D.R.App.P. 47.1(a)(1)(A). Unlike cases in state court where the parties have a right to appeal, declining a question certified by a foreign court "leave[s] that court to speculate upon unsettled issues of North Dakota law, and the parties have no recourse in the appellate courts of this State." *Mosser v. Denbury Res., Inc.*, 2017 ND 169, ¶ 9, 898 N.W.2d 406 (quoting *Bornsen v. Pragotrade, LLC*, 2011 ND 183, ¶ 7, 804 N.W.2d 55).

[¶6] The Domineks claim the Commission's jurisdiction is limited to preventing waste and protecting correlative rights. They assert the Commission "would act outside its authority if it started reallocating production from one spacing unit into another spacing unit." They read the language from the pooling orders as acknowledging the Commission's limited

5

jurisdiction and prohibiting allocation from one spacing unit to another. They also claim the statutory language only applies to operations within a spacing unit and thus does not necessitate allocation from one unit to another. In summary, the Domineks claim production from a well authorized by a spacing unit must stay within that unit.

[¶7] Equinor asserts the Commission has jurisdiction over disputes concerning the proper allocation of oil and gas production. Equinor therefore claims the Domineks failed to exhaust their administrative remedies. Equinor acknowledges it did not raise this issue before the federal district court but argues it is a jurisdictional matter that can be raised at any time. On the merits, Equinor asserts none of the language in the certified questions decides the issue on its own. Equinor contends a sequential reading of the pooling orders and the statute require allocation of production from Section 13 to Section 24. First, Equinor reads the pooling order for the Overlapping Spacing Unit to require allocation of production from the section line well to Section 13. Next, Equinor contends N.D.C.C. § 38-08-08(1) requires production from any part of Section 13 to be treated as production from every part of Section 13 "for all purposes." Thus, under Equinor's interpretation, "production from the [section line] well is no longer just production from a single well, but rather production from wells located on each and every tract in Section 13." Last, Equinor argues production from Section 13 must be allocated to Section 24 pursuant to the pooling order for the Underlying Spacing Unit. Equinor claims this sequential reading requires production in Section 13 from the section line well to be allocated to Section 24.

[¶8] The Commission filed an amicus brief claiming "the certified question at issue pertains directly to the Commission's authority to regulate the oil and gas industry and the practices it has employed in the state to do so." The Commission agrees with the reading advanced by Equinor and claims production must be allocated from Section 13 to Section 24. The Commission claims the method advanced by Equinor prevents waste and protects the correlative rights of all of the interest owners. The North Dakota Petroleum Council also filed a brief in support of Equinor. The Petroleum Council claims the reading advanced by the Domineks would create a "fundamental shift" in

6

how production is allocated in North Dakota, which would result in widespread litigation and delayed production on federal and Indian lands.

[¶9] Continental Resources filed an amicus brief noting it is the largest oil and gas producer in North Dakota. Continental agrees with the method advanced by the Domineks. However, Continental claims this Court should not answer the certified questions for various reasons. Continental claims this is an administrative matter that should be decided by the Commission. Continental also argues this is a political question that is appropriate for the legislature to decide. Owners of mineral interests in tracts with wells operated by Continental also filed an amicus brief. Their interests are similarly situated to those in Section 24. They claim their interests "will be confiscated, diluted, and drained without receiving any payment" if the Court agrees with the Domineks.

## A

[¶10] We agree to answer the first question. The question is limited to whether language from N.D.C.C. § 38-08-08(1) requires allocation of production from Section 13 to Section 24. An affirmative answer would be determinative of the federal case. However, as we explain below, the answer to the question is "no."

[¶11] The meaning of a statute is a legal question. *Krueger v. N.D. Dep't Transp.*, 2018 ND 108, ¶ 14, 910 N.W.2d 850. "The primary objective in interpreting statutes is to determine legislative intent, and that intent initially must be sought from the language of the statute." *Mosser*, 2017 ND 169, ¶ 13. "When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1-02-05. If the meaning of a statute is ambiguous or doubtful, a court may consider extrinsic aids to determine the legislative intent. N.D.C.C. § 1-02-39. "'A statute is ambiguous if it is susceptible to differing but rational meanings.'" *Mosser*, at ¶ 13 (quoting *W. Gas Res., Inc. v. Heitkamp*, 489 N.W.2d 869, 872 (N.D. 1992)).

[¶12] The federal court asks us to interpret the following language from N.D.C.C. § 38-08-08(1):

7

Operations incident to the drilling of a well upon any portion of a spacing unit covered by a pooling order must be deemed, for all purposes, the conduct of such operations upon each separately owned tract in the drilling unit by the several owners thereof. That portion of the production allocated to each tract included in a spacing unit covered by a pooling order must, when produced, be deemed for all purposes to have been produced from such tract by a well drilled thereon.

The question before us is: "Does the relevant portion of Section 38-08-08(1) of the North Dakota Century Code require the allocation of production from Section 13 of the Overlapping Spacing Unit to Section 24 of the Underlying Spacing Unit?"

[¶13] The Domineks note the statute refers to "operations" within a "spacing unit," and they argue operation of the section line well is exclusive to the Overlapping Spacing Unit. Under the Domineks' reading, the section line well is not within the Underlying Spacing Unit, and therefore the underlying unit should not share in the production. On the other hand, Equinor claims the statute requires allocation of production from Section 13 to Section 24 by reading the statute alongside a "logical and ordered application of the Commission's orders." Equinor argues the significance of the statute is that it requires production from the section line well to be allocated to every tract in Section 13 "for all purposes." Equinor contends this language, taken together with language from the Underlying Spacing Unit pooling order, requires allocation to Section 24.

[¶14] Section 38-08-08(1), N.D.C.C., does not speak in terms of multiple, overlapping spacing units or provide explicit rules for allocation of production among more than one unit. None of the parties, nor the Commission, contend the statute, on its own, requires allocation of production across overlapping spacing units. Equinor's interpretation goes beyond the statute and relies on language from pooling orders to reach its desired result. But the federal court has not asked us to determine whether the statute, read together with other documents, requires the allocation method advanced by Equinor. The court's question is specific and limited to whether the relevant language requires

8

allocation of production from the Overlapping Spacing Unit to the Underlying Spacing Unit. We read nothing in the statute to require this type of allocation. Nor do we see any language to create an ambiguity as to whether or not the legislature intended such allocation. The statute simply does not contemplate the issue. We therefore answer the first question "no." Section 38-08-08(1), N.D.C.C., does not require allocation of production from Section 13 to Section 24.

B

[¶15] The remaining questions ask us to determine whether or not language from the Commission's pooling orders requires or prohibits allocation of production from Section 13 to Section 24. These questions are based on an assumption that the Commission has jurisdiction to direct how production is allocated among mineral interest owners. Under N.D.C.C. § 38-08-04, "[t]he commission has continuing jurisdiction and authority over all persons and property, public and private, necessary to enforce the provisions of this chapter. The commission has authority, and it is its duty, to make such investigations as it deems proper to determine whether waste exists or is imminent or whether other facts exist which justify action by the commission." Section 38-08-07(1) authorizes the Commission to set spacing units for a pool. A "pool" is "an underground reservoir containing a common accumulation of oil or gas or both; each zone of a structure which is completely separated from any other zone in the same structure is a pool." N.D.C.C. § 38-08-02(13). The Commission may modify a spacing unit for a pool "[w]hen found necessary for the prevention of waste, or to avoid the drilling of unnecessary wells, or to protect correlative rights." N.D.C.C. § 38-08-07(4).

[¶16] The Domineks assert this is a private dispute beyond the Commission's authority. They claim the Commission's authority to create spacing units and pool mineral interests is "rooted in the State's mandate to avoid waste and protect correlative rights." They argue allocating production from one spacing unit to another is "outside" the Commission's authority because it damages rather than protects correlative rights. Equinor disagrees. Equinor asserts its allocation method in fact protects correlative rights. Equinor claims the

Commission has the power to create spacing units and a mandate to protect correlative rights. Equinor therefore argues the dispute is within the Commission's jurisdiction and the Domineks failed to exhaust their administrative remedies.

[¶17] The parties have brought the jurisdictional issue to the forefront of the case, but the federal court has not asked us to decide whether the Commission has jurisdiction or whether the Domineks failed to exhaust administrative remedies. *See Cont'l Res, Inc. v. Counce Energy BC #1, LLC*, 2018 ND 10, ¶¶ 8-9, 905 N.W.2d 768 (holding the Commission had jurisdiction to resolve dispute concerning drilling costs for pooled interests and the parties failed to exhaust their administrative remedies). Questions concerning correlative rights and the Commission's jurisdiction entail factual considerations. *See Blue Appaloosa, Inc. v. N.D. Indus. Comm'n*, 2022 ND 119, ¶ 7, 975 N.W.2d 578 (evidence supported the Commission's findings underlying its exercise of jurisdiction over the construction of a treating plant); *Hystad v. Indus. Comm'n*, 389 N.W.2d 590, 596 (N.D. 1986) (determining the extent of correlative rights requires "highly technical geological and economic information"); *Amoco Prod. Co. v. N.D. Indus. Comm'n*, 307 N.W.2d 839, 848 (N.D. 1981) (the Commission "may accept evidence it deems credible and reject evidence it deems incredible" when determining issues concerning correlative rights and the creation of spacing units). Here, the record is void of any findings concerning the extent of the parties' correlative rights or the Commission's jurisdiction. An undeveloped record exposes this Court "to the danger of improvidently deciding issues and of not sufficiently contemplating ramifications of the opinion." *Blasi*, 2021 ND 86, ¶ 27 (Nelson, S.J., dissenting) (quoting *Bornsen*, 2011 ND 183, ¶ 26). For these reasons, we decline to answer the remaining questions.

### III

[¶18] Our answer to the first question is "no." We decline to answer questions two through five.

[¶19] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
James Hill, D.J.

[¶20] The Honorable James Hill, D.J., sitting in place of VandeWalle, J., disqualified.