# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2026 ND 25

Jonathan T. Garaas and David Garaas, as Co-Trustees
of the Barbara Susan Garaas Family Trust; Jonathan T. Garaas,
as Trustee of the David and Elizabeth Garaas Family Trust;
and David Garaas, as Trustee of the
Jonathan & Jill Garaas Family Trust,         Appellants

v.

North Dakota Industrial Commission; and Petro-Hunt L.L.C.,
a limited liability company under the laws of Texas,         Appellees

### No. 20250109

Appeal from the District Court of McKenzie County, Northwest Judicial District,
the Honorable Benjamen J. Johnson, Judge.

REVERSED.

Opinion of the Court by Crothers, Justice.

Jonathan T. Garaas, Fargo, ND, for plaintiffs and appellants.

Davis P. Garner, Assistant Attorney General, Bismarck, ND, for appellee North
Dakota Industrial Commission.

Wade C. Mann (argued) and Zachary R. Eiken (appeared), Bismarck, ND, for
appellee Petro-Hunt L.L.C.

David E. Bengtson, Wichita, KS, Robin W. Forward and Haley K. Finch,
Bismarck, ND, for amicus curiae Continental Resources, Inc.

Derrick Braaten and Charles Carvell, Bismarck, ND, amicus curiae Allen
Dominek and Arlen Dominek.

Joshua A. Swanson, Fargo, ND, for amicus curiae Thurmon Andress, Melissa Sandefer, Julie Sandefer, Lisa Sandefer, Thomas Thompson, Robert Fulwiler, McTan Holdings, LP, Tejon Exploration Company, Randa K. Upp, and David Halbert.

Michael J. Mazzone, Houston, TX, and Ryan P. Pitts, Austin, TX, for amicus curiae Chord Energy Corporation, Oasis Petroleum North America LLC, Whiting Oil and Gas Corporation, Enerplus Resources (USA) Corporation, Hess Bakken Investments II, LLC, and Devon Energy Williston, L.L.C.

**Crothers, Justice.**

[¶1]  Jonathan T. Garaas and David Garaas (collectively "Garaas"), as Co-Trustees of the Barbara Susan Garaas Family Trust; Jonathan T. Garaas, as Trustee of the David and Elizabeth Garaas Family Trust; and David Garaas, as Trustee of the Jonathan and Jill Garaas Family Trust ("the Trusts") appeal from a district court judgment affirming a North Dakota Industrial Commission ("NDIC") order allocating production from a well located in a lease-line spacing unit to a section outside the spacing unit but within a base unit partially contained in the lease-line spacing unit. The Trusts claim NDIC exceeded its authority by issuing the order allocating production, and the order is not supported by law or substantial and credible evidence. The Trusts also claim NDIC did not regularly pursue its authority in issuing the order because proper procedures were not followed. They argue the order amounts to an unconstitutional taking. The Trusts seek attorney's fees. We reverse the district court's judgment and vacate NDIC Order No. 33453.

I

[¶2]  Garaas is the trustee to three trusts that own mineral interests in McKenzie County. Petro-Hunt, L.L.C. operates USA #153-96-13A-24-1HS well on the land. The USA well involves a four-section, 2,560-acre, spacing unit (the "overlapping unit") created on October 9, 2019, by NDIC Order No. 30323. The underlying or base spacing unit consists of Sections 19 and 20, a 1,280-acre unit (the "base unit") created on December 31, 2009, by NDIC Order No. 13922. Only Section 19 lies within the underlying and overlapping units. NDIC Order No. 33453 allocates production from the USA well to Section 20.



Township 153 North, Range 96 West  Township 153 North, Range 95 West

13    18    17

24    19    20

🟩 2,560-acre spacing unit

🟥 1,280-acre spacing unit

—— Lease-line well route

[¶3]   The Trusts each own an undivided 1/3 interest in a royalty of 3/8ths of 1% royalty in oil, gas and other minerals produced and saved from Lot 4 of Section 18 and Lots 1 and 2 of Section 19, approximately 160 acres. NDIC Order No. 13922 established an approximately 1,280-acre lay down (west to east configuration) spacing unit consisting of Sections 19 and 20 of Township 153 North, Range 95 West. Order No. 13922 established a setback limitation from the western boundary of Section 19 to protect the correlative rights of owners in the adjacent spacing units. Oasis Petroleum North America LLC thereafter drilled numerous oil and gas wells on the base unit.

[¶4]   To develop the interests of the setback areas, NDIC issued Order No. 30323, establishing the overlapping unit, which is a 2,560-acre spacing unit consisting of Sections 13 and 24, Township 153 North, Range 96 West and Sections 18 and 19, Township 153 North, Range 95 West, McKenzie County, North Dakota. Petro-Hunt drilled the USA well along the east section lines of Sections 13 and 24 and the west section lines of Sections 18 and 19.

[¶5]  Petro-Hunt divided production across all lands within the overlapping lease-line unit as follows: (1) 25% of production was allocated to the base unit (640/2,560); and (2) 50% of that 25% allocation was then allocated to Section 20 (640/1,280):



[¶6]  The Trusts' interests were calculated as: 158.68 acres × (3/8 of 1%) = 0.59505 (John O. Garaas and Barbara Garaas' original share) / 3 = 0.19835 (share of each Trust) / 2555.68 acres = 0.00007761. In November 2022, Petro-Hunt issued a supplemental division order for the USA well, allocating production from the overlapping spacing unit to Section 20, which reduced the Trusts' interest to 0.0005819.

[¶7]  In February 2023, the Trusts initiated civil proceedings against Petro-Hunt seeking declaratory judgment and damages, requesting that each of the Trusts share a royalty interest of at least 0.00007757 and for a monetary judgment based upon the difference between the determined royalty interest and the supplemental division order interest. McKenzie County Case No. 27-2023-CV-00065. The district court dismissed the case. We affirmed, concluding "the Trusts are required to exhaust their administrative remedies before the North Dakota Industrial Commission prior to bringing their claims in district court." *Garaas as*

3

*Co-Trs. of Barbara Susan Garaas Fam. Tr. v. Petro-Hunt, L.L.C.* ("*Garaas I*"), 2024 ND 34, ¶ 1, 3 N.W.3d 156 (cleaned up).

[¶8]   In February 2023, Petro-Hunt applied to NDIC for an order "clarifying that production allocated to Section 19 by Order No. 30323 must be shared with all owners of interests in Section 20 pursuant to Order No. 13922." A copy of the application was emailed to the Garaas Law Firm. NDIC published a notice in the McKenzie County Farmer and the Bismarck Tribune stating a public hearing would be held on March 22, 2023. Garaas filed a "mineral interest owners' response to [the] application."

[¶9]   A Commission hearing was held on March 22, 2023. The parties appeared and presented evidence. The application was stayed pending litigation in McKenzie County Case No. 27-2023-CV-00065. On February 22, 2024, *Garaas I*, 2024 ND 34, was issued and on March 18, 2024, judgment was entered affirming the district court's dismissal of the litigation.

[¶10]   In *Garaas I*, this Court held: "Because some of the issues raised in this case are within the Industrial Commission's jurisdiction, the Industrial Commission must consider the factual issues and make findings rather than the district court." 2024 ND 34, ¶ 16. We explained:

> [T]his case requires findings on factual issues related to the correlative rights of the owners in the pool. "Questions concerning correlative rights and the Commission's jurisdiction entail factual considerations." *Dominek v. Equinor Energy L.P.*, 2022 ND 211, ¶ 17, 982 N.W.2d 303. To answer those questions, a fact finder must find facts related to the mineral interest and interpret the Industrial Commission's orders to determine the correct value of the royalty interest. The Industrial Commission has jurisdiction to resolve those factual issues. N.D.C.C. § 38-08-04(1)(c). Here, the Industrial Commission can make statutory interpretations necessary for the case, create a record, and decide factual issues before the case proceeds to district court. Therefore, because of the Industrial Commission's jurisdiction, the Trusts must first bring the issues before the Industrial Commission to allow it to exercise its jurisdiction, make finding of facts, and develop a complete record. *See Vogel [v. Marathon Oil Co.]*, 2016 ND 104, ¶ 36, 879 N.W.2d 471;

4

*see also Dominek v. Equinor Energy L.P.*, No. 1:19-cv-288, 2023 WL 3742825 (D.N.D. May 31, 2023) (concluding the court lacks subject matter jurisdiction because plaintiffs' claims fall within the Industrial Commission's jurisdiction and plaintiffs failed to exhaust their administrative remedies).

*Id.* ¶ 15.

[¶11] On March 26, 2024, NDIC issued Order No. 33453 allocating production from the USA well in the lease-line spacing unit to the "base spacing unit based upon any valid pooling agreement" and defined the term "base spacing unit." When NDIC issued Order No. 33453 it did not modify the spacing units created by Orders Nos. 13922 and 30323. The Trusts appealed Order No. 33453 to the district court. The court affirmed NDIC's order. The Trusts timely appeal.

## II

[¶12] The Trusts present more than 15 issues for review. The dispositive questions are whether NDIC had authority to allocate production from an overlapping spacing unit to a base spacing unit not wholly contained within the overlapping unit, and whether NDIC regularly pursued its authority. We conclude NDIC had authority to allocate the production from the overlapping spacing unit to the underlying base unit, but it did not regularly pursue its authority.

## A

[¶13] "Our review of NDIC orders is very limited." *Liberty Petroleum Corp. v. NDIC*, 2024 ND 183, ¶ 6, 11 N.W.3d 851 (cleaned up). The district court's standard of judicial review for NDIC proceedings is provided by statute: "Orders of the commission must be sustained by the district court if the commission has regularly pursued its authority and its findings and conclusions are sustained by the law and by substantial and credible evidence." N.D.C.C. § 38-08-14(3). "This Court applies the same standard of review in appeals from district court involving orders of the Commission." *Liberty Petroleum*, ¶ 6 (citation omitted).

[¶14] "The 'substantial evidence' test is something less than the greater weight of the evidence and the preponderance of the evidence tests, and differs from the usual standard of review for administrative decisions under N.D.C.C. § 28-32-46." *Liberty Petroleum*, 2024 ND 183, ¶ 6 (cleaned up). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and we accord greater deference to Industrial Commission findings of fact than we ordinarily accord to other administrative agencies' findings of fact." *Id.* (cleaned up). "The Commission's decisions on questions of law are fully reviewable on appeal." *Id.* (citation omitted).

B

[¶15] The Trusts claim NDIC does not have legal authority to allocate production from an overlapping unit to an underlying base unit. NDIC argues its authority derives from N.D.C.C. § 38-08-08(1). Petro-Hunt argues NDIC was authorized to protect the rights of all affected owners by pooling under N.D.C.C. § 38-08-08(1) and allocating production from a pool under N.D.C.C. § 38-08-04(1)(c). Amici Thurman Andress and Chord Energy agree with NDIC and Petro-Hunt. Amici Continental Petroleum and Dominek agree with the Trusts that NDIC lacked authority to allocate proceeds from the overlapping spacing unit to the base spacing unit.

[¶16] The Trusts, Continental, and Dominek argue N.D.C.C. § 38-08-08(1) limits allocation of production to owners of interests in the spacing unit, and Order No. 33453 violates the statue by allocating production from the overlapping unit to interest owners outside that unit. NDIC claims it correctly allocated production among all interest owners in both units to protect correlative rights generally, and to ensure production of resources along lease-line setbacks.

[¶17] In Order No. 33453, NDIC interpreted N.D.C.C. § 38-08-08(1) to require proportionate amounts of any production allocated to Section 19 be allocated to Section 20. NDIC's order relied on N.D.C.C. § 38-08-08(1) alone, and found:

> When the Commission creates or pools a spacing unit, it establishes a drilling setback prohibiting wellbores within a certain distance from the spacing unit boundary to prevent the immediate

draining of mineral resources across the spacing unit boundary and allowing offset owners time to drill a well and compete for the mineral resources thus preventing unfair drainage and protecting correlative rights. The Commission is aware that prevention of drilling within the setback area results in a reduction in the ultimate recovery of minerals in spacing units throughout North Dakota.

Due to these setback areas where completion of a well is prohibited, the Commission allows lease-line horizontal wells to be drilled and completed on a common spacing unit boundary between existing spacing units, by establishing an overlapping spacing unit that contains areas of similar size on either side of the common spacing unit boundary.

Allocation of production from a horizontal well in a lease-line spacing unit is allocated to the various interest owners in tracts within the lease-line spacing unit based upon an acreage basis in the spacing unit. While production is allocated to the various tracts within the lease-line spacing unit, it may then be reallocated to tracts outside the lease-line spacing unit based upon pooling agreements that include a particular tract within the lease-line spacing unit.

The Commission's practice regarding overlapping spacing units is based on its reasonable interpretation of NDCC Section 38-08-08 and is consistent with the statutory language requiring production allocated to a tract to be treated as if it were produced from that tract for all purposes.

[¶18] With this background, we turn to the question whether NDIC has lawful authority to allocate production from an overlapping spacing unit to a base spacing unit not wholly contained within the overlapping unit.

1

[¶19] NDIC's jurisdiction is defined by statute. The term "jurisdiction" has three components in the administrative law context, including "the agency's scope of authority under statute." *Kirkpatrick v. N.D. Dep't of Transp.*, 2023 ND 190, ¶ 11, 996 N.W.2d 640 (citations omitted). "In this context, 'authority' means 'the official right or permission to act.'" *Id.* ¶ 12 (quoting *Black's Law Dictionary*, 163 (11th ed. 2019)). NDIC, like all administrative agencies, are creatures of statute

and only have the authority expressly granted by the legislature or necessarily implied from the legislature's express grant of authority. *First Bank of Buffalo v. Conrad*, 350 N.W.2d 580, 584 (N.D. 1984) ("Basically, administrative agencies are creatures of legislative action."); *Heier v. N.D. Dep't of Corr. & Rehab.*, 2012 ND 171, ¶ 18, 820 N.W.2d 394 ("An agency only has the authority or power granted to it by the legislature."); *see also Env't Law & Policy Ctr. v. N.D. Pub. Serv. Comm'n*, 2020 ND 192, ¶ 11, 948 N.W.2d 838 ("The Commission's 'authority to regulate' is limited to that authority provided to it by the legislature."); *Matter of Nebraska Pub. Power Dist.*, 330 N.W.2d 143, 149 (N.D. 1983) ("The PSC's authority to regulate is limited to that given it by the Legislature."). Therefore, Petro-Hunt's argument that nothing in N.D.C.C. § 38-08-08(1) "forbids" NDIC from allocating production from different pooling units is contrary to the law.

[¶20] Chapter 38-08, N.D.C.C., grants NDIC broad authority to regulate oil and gas production. However, the agency's authority is not unlimited. *See Env't Law & Policy Ctr. v. N.D. Pub. Serv. Comm'n*, 2020 ND 192, ¶ 11; *Matter of Nebraska Pub. Power Dist.*, 330 N.W.2d at 149 (N.D. 1983). "Questions of law, including the interpretation of a statute, are fully reviewable on appeal." *State by & through Workforce Safety & Ins. v. Questar Energy Servs., Inc.*, 2017 ND 241, ¶ 11, 902 N.W.2d 757 (citation omitted). "The primary objective in interpreting statutes is to determine legislative intent, and that intent initially must be sought from the language of the statute." *Mosser v. Denbury Res., Inc.*, 2017 ND 169, ¶ 13, 898 N.W.2d 406. "When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1-02-05.

[¶21] The Commission has authority to set spacing units. N.D.C.C. § 38-08-07; *see also Gadeco, LCC, v. NDIC*, 2012 ND 33, ¶ 4, 812 N.W.2d 405 (the Act for the Control of Gas and Oil Resources authorized the Commission to set spacing units for a common source of supply to prevent waste, avoid the drilling of unnecessary wells or to protect correlative rights). A "spacing unit" is "the area in each pool which is assigned to a well for drilling, producing, and proration purposes in accordance with the commission's rules or orders." N.D. Admin. Code § 43-02-03-01(50). "When necessary to prevent waste, to avoid the drilling of unnecessary wells, or to protect correlative rights, the commission shall

establish spacing units for a pool." N.D.C.C. § 38-08-07(1). Orders establishing spacing units "must cover all lands determined or believed to be underlaid by such pool . . . ." N.D.C.C. § 38-08-07(4).

[¶22] The Commission has authority to "pool [ ] interests for the development and operation of the spacing units." N.D.C.C. § 38-08-08(1). A "pool" is "an underground reservoir containing a common accumulation of oil or gas or both; each zone of a structure which is completely separated from any other zone in the same structure is a pool[.]" N.D.C.C. § 38-08-02(13). "The purposes of pooling are to prevent the physical and economic waste that accompany the drilling of unnecessary wells and to protect the correlative rights of landowners over a reservoir." *Slawson v. NDIC*, 339 N.W.2d 772, 774 (N.D. 1983) (citing 6 H. Williams and C. Meyers, *Oil and Gas Law* § 901, p. 3 (1981 Ed.); 1 R. Myers, *The Law of Pooling and Unitization* § 8.01(2), p. 256 (1967 Ed.)).

[¶23] Pooling is governed by N.D.C.C. § 38-08-08. Section 38-08-08(1), N.D.C.C., states:

> When two or more separately owned tracts are embraced within a spacing unit, or when there are separately owned interests in all or a part of the spacing unit, then the owners and royalty owners thereof may pool their interests for the development and operation of the spacing unit. In the absence of voluntary pooling, the commission upon the application of any interested person shall enter an order pooling all interests in the spacing unit for the development and operations thereof. Each such pooling order must be made after notice and hearing, and must be upon terms and conditions that are just and reasonable, and that afford to the owner of each tract or interest in the spacing unit the opportunity to recover or receive, without unnecessary expense, that owner's just and equitable share. Operations incident to the drilling of a well upon any portion of a spacing unit covered by a pooling order must be deemed, for all purposes, the conduct of such operations upon each separately owned tract in the drilling unit by the several owners thereof. That portion of the production allocated to each tract included in a spacing unit covered by a pooling order must, when produced, be deemed for all purposes to have been produced from such tract by a well drilled thereon. For the purposes of this section

9

and section 38-08-10, any unleased mineral interest pooled by virtue of this section before August 1, 2009, is entitled to a cost-free royalty interest equal to the acreage weighted average royalty interest of the leased tracts within the spacing unit, but in no event may the royalty interest of an unleased tract be less than a one-eighth interest. An unleased mineral interest pooled after July 31, 2009, is entitled to a cost-free royalty interest equal to the acreage weighted average royalty interest of the leased tracts within the spacing unit or, at the operator's election, a cost-free royalty interest of sixteen percent. The remainder of the unleased interest must be treated as a lessee or cost-bearing interest.

[¶24] All parties to this appeal correctly argue NDIC can and must use spacing units to protect correlative rights. *See* N.D.C.C. § 38-08-01 ("It is hereby declared to be in the public interest to foster, to encourage, and to promote the development, production, and utilization of natural resources of oil and gas in the state in such a manner as will prevent waste; to authorize and to provide for the operation and development of oil and gas properties in such a manner that a greater ultimate recovery of oil and gas be had and that the correlative rights of all owners be fully protected. . . ."). NDIC protects correlative rights by creating, and if necessary modifying, spacing units for the drilling and production of wells.

[¶25] Section 38-08-01, N.D.C.C., states, in part, that NDIC should exercise its statutory responsibilities in a manner so that "the correlative rights of all owners be fully protected[.]" However, this section is a statement of overarching policy. The statement of policy does not delegate authority to NDIC. Rather, NDIC may further the policy goal to protect correlative rights only by taking actions that are within its expressly delegated statutory powers. *See Env't Law & Policy Ctr.*, 2020 ND 192, ¶ 11 (Commission's authority is limited to authority provided by legislature); *Matter of Nebraska Pub. Power Dist.*, 330 N.W.2d at 149 (same).

[¶26] In *Dominek v. Equinor Energy*, 2022 ND 211, we considered whether N.D.C.C. § 38-08-08(1) *requires* allocation to a section in the base unit affected by the overlapping unit, and concluded section 38-08-08(1) alone does not command allocation because "[t]he statute simply does not contemplate the issue." *Dominek*, ¶ 14. We explained, "Section 38-08-08(1), N.D.C.C., does not speak in

10

terms of multiple, overlapping spacing units or provide explicit rules for allocation of production among more than one unit. None of the parties, nor the Commission, contend the statute, on its own, requires allocation of production across overlapping spacing units." *Id.* We declined to answer further questions regarding "whether or not language from the Commission's pooling orders requires or prohibits allocation of production" from an overlapping spacing unit to an underlying base unit, noting the questions "are based on an assumption that the Commission has jurisdiction to direct how production is allocated among mineral interest owners" because "the record [was] void of any findings concerning the extent of the parties' correlative rights or the Commission's jurisdiction." *Id.* ¶¶ 15, 17.

[¶27] NDIC and Petro-Hunt argue a portion of N.D.C.C. § 38-08-08 authorizes NDIC's allocation of production from the overlapping unit to the base unit. They specifically rely on the following language: "That portion of the production allocated to each tract included in a spacing unit covered by a pooling order must, when produced, be deemed for all purposes to have been produced from such tract by a well drilled thereon." N.D.C.C. § 38-08-08(1). We rejected this argument in *Dominek*. We explained nothing in N.D.C.C. § 38-08-08(1) created an "ambiguity as to whether or not the legislature intended such allocation." *Dominek*, 2022 ND 211, ¶ 14. The quoted portion of N.D.C.C. § 38-08-08(1) does not authorize NDIC to allocate the production from the overlapping unit to the base unit.

[¶28] To the contrary, N.D.C.C. § 38-08-08 provides production from a spacing unit, when pooled, only can be allocated to oil and gas interests within the boundaries of the pooled spacing unit:

> In the absence of voluntary pooling, the commission . . . shall enter an order pooling all interests in the spacing unit for the development and operations thereof. Each such pooling order must . . . afford the owner of each tract or interest in the spacing unit the opportunity to recover or receive, without unnecessary expense, that owner's just and equitable share.

11

[¶29] Nothing in N.D.C.C. § 38-08-08(1) authorizes NDIC to allocate production from one spacing unit to an owner of an interest in another spacing unit. Therefore, N.D.C.C. § 38-08-08(1) did not provide NDIC with legal authority to allocate production from the overlapping spacing unit to the base unit.

2

[¶30] Petro-Hunt argues N.D.C.C. § 38-08-04(1)(c) provides NDIC with authority to reallocate production proceeds between the two spacing units. Section 38-08-04(1), N.D.C.C., provides:

> The commission has continuing jurisdiction and authority over all persons and property, public and private, necessary to enforce effectively the provisions of this chapter. The commission has authority, and it is its duty, to make such investigations as it deems proper to determine whether waste exists or is imminent or whether other facts exist which justify action by the commission. The commission has the authority:
> . . . .
> (c) To limit and to allocate the production of oil and gas from any field, pool, or area and to establish and define as separate marketing districts those contiguous areas within the state which supply oil and gas to different markets, and to limit and allocate the production of oil and gas for each separate marketing district.

[¶31] Section 38-08-04(1)(c), N.D.C.C., contains two main infinitive phrases joined by the conjunction "and." *See State v. Berkley*, 2025 ND 134, ¶ 18, 24 N.W.3d 69 ("The word 'and' is conjunctive in nature and ordinarily means in addition to.") (citation omitted); *see also* North Dakota Legislative Drafting Manual, at 103 (2025) ("If the units of a series are all regularly connected by conjunctions, then no commas are necessary."). The statute grants NDIC two separate and independent authorities. The statute grants NDIC "the authority" to "limit and to allocate production of oil and gas from any field, pool or area." The statute also grants NDIC authority to establish marketing districts and to limit and allocate production within the marketing districts. By this structure, the scope of the first infinitive phrase is complete and unrestricted: "To limit and to allocate the production of oil and gas from any field, pool, or area[.]" The

12

language in the first phrase "any field, pool, or area" is broad and contains no limitation to marketing districts.

[¶32] The language in the second infinitive phrase of N.D.C.C. § 38-08-04(1)(c) has its own internal structure: "to establish and define as separate marketing districts those contiguous areas . . . and to limit and allocate the production of oil and gas for each separate marketing district." This second phrase operates independently from the first phrase. The structure of the second phrase also is important because it uses the preposition "for." The phrase "for each separate marketing district" modifies only the second instance of "limit and allocate." If the drafters intended marketing districts to limit the first grant of authority, they would have used restrictive language, (*e.g.*, "within marketing districts" or "limited to marketing districts").

[¶33] From this analysis, the first phrase of N.D.C.C. § 38-08-04(1)(c) provides NDIC with general authority to allocate production from any field, pool, or area, plus additional specific authority to create marketing districts and manage production within them. The marketing district authority is supplemental, not restrictive to NDIC's overall authority to limit and allocate production of oil and gas. NDIC therefore had legal authority to allocate oil and gas production among spacing units.

3

[¶34] The Trusts claim that even if NDIC had legal authority to allocate production among spacing units, it did not regularly pursue that authority. We agree.

[¶35] "Orders of the commission must be sustained by the district court if the commission has regularly pursued its authority[.]" N.D.C.C. § 38-08-14. An agency's authority is granted to it by the legislature. *Env't Law & Policy Ctr.*, 2020 ND 192, ¶ 11. An agency fails to "regularly pursue its authority" when it acts outside its legislative mandate. "Whether an administrative agency has exceeded its statutory authority is a question of law fully reviewable on appeal." *Reile v. State by & through Workforce Safety & Ins.*, 2025 ND 6, ¶ 13, 16 N.W.3d 212.

13

[¶36] NDIC has authority to enter pooling orders. N.D.C.C. § 38-08-08. Absent voluntary pooling, and upon the application of any interested person, NDIC must "enter an order pooling all interests in the spacing unit for the development and operations thereof." N.D.C.C. § 38-08-08(1). Any pooling order "must be upon terms and conditions that are just and reasonable, and that afford to the owner of each tract or interest in the spacing unit the opportunity to recover or receive, without unnecessary expense, that owner's just and equitable share." *Id.* Upon pooling of a spacing unit, "production allocated to each tract . . . covered by a pooling order must, when produced, be deemed for all purposes to have been produced from such tract by a well drilled thereon." *Id.* "The commission has the authority . . . [t]o limit and to allocate the production of oil and gas from any field, pool, or area[.]" N.D.C.C. § 38-08-04(1)(c).

[¶37] NDIC Order No. 13922 for the base unit pooled the oil and gas interests in Sections 19 and 20, Township 153 North, Range 95 West, McKenzie County, North Dakota, for the production from the horizontal wells drilled in *that* spacing unit. That order applies to both working interests and mineral/royalty interests within *that* spacing unit. The order states: "All owners of interests shall recover or receive, without unnecessary expense, their just and equitable share of production from said spacing unit in the proportion as their interests may appear in the spacing unit."

[¶38] Order No. 13922 applies only to "the development and operation of the [wells drilled in the] spacing unit." The Order therefore only controls production from wells drilled within the base unit. Nothing in Order No. 13922 expressly or implicitly authorizes allocation of production from wells drilled in other spacing units.

[¶39] Similarly, Order No. 30323, establishing the overlapping unit, pooled the oil and gas interests in Sections 13 and 24, Township 153 North, Range 96 West and Sections 18 and 19, Township 153 North, Range 95 West, for the production of oil and gas from the lease-line horizontal well drilled in that spacing unit. That order contains the same language as Order No. 13922 referred to above, which does not authorize the allocation of production to the base spacing unit. Order No. 30323 contains an additional limiting provision:

14

> This order is limited to pooling the spacing unit described above for the development and operation of such spacing unit by the horizontal well(s) authorized for such spacing unit by order of the Commission. This order does not modify, amend or alter previous pooling orders for other spacing units or require the reallocation of production allocated to separately owned tracts within any spacing unit by any existing pooling orders or any pooling agreements.

Nothing in this additional language authorizes allocation of production from the overlapping spacing unit to the base spacing unit. To the contrary, the limiting language in Order No. 30323 expresses NDIC's intent that pooling orders for spacing units that overlap and cover the same acreage do not modify prior pooling orders or require allocation of production between overlapping spacing units.

[¶40] NDIC neither cites nor argues any other language in Order Nos. 13922 or 30323 authorizes the allocation of production from the overlapping spacing unit to the base spacing unit. The pooling orders instead prevent NDIC from allocating production from the overlapping spacing unit to the base spacing unit. The lack of authorizing language in the applicable pooling orders prevented NDIC from authorizing the allocation of production from the overlapping spacing unit to the base spacing unit.

[¶41] The spacing statute, N.D.C.C. § 38-08-07, expressly states, in pertinent part, that "[w]hen found necessary . . . to protect correlative rights, an order establishing spacing units in a pool may be modified by the commission to increase or decrease the size of spacing units in the pool or any zone thereof . . . ." N.D.C.C. § 38-08-07(4). On the record presented here, NDIC's order approving Petro-Hunt's allocation of production from the overlapping spacing unit effectively enlarged the spacing unit for the lease-line horizontal well to include acreage outside the boundaries of the existing spacing unit—*i.e.*, both the overlapping unit and the base unit. However, it did so without an application to modify the existing orders. Without an application, Petro-Hunt was able to proceed without notice to the oil and gas interest owners in the existing spacing units and the modified spacing unit for that well. Proper notice of the action to be taken by NDIC and an opportunity by all potentially affected interest owners

15

to participate is necessary to comply with fundamental notions of due process. Therefore, NDIC did not regularly pursue its authority in issuing Order No. 33453. We reverse the district court's decision and vacate NDIC Order No. 33453.

## III

[¶42] The Trusts request attorney's fees "under the principles found in N.D.C.C. § 28-32-50." "[T]he court must award the party not an administrative agency reasonable attorney's fees and costs if the court finds in favor of that party and, in the case of a final agency order, determines that the administrative agency acted without substantial justification." N.D.C.C. § 28-32-50(1). Although we reverse NDIC's order, the record does not support a finding NDIC acted without substantial justification. We deny the Trusts' request for attorney's fees.

## IV

[¶43] We reverse the district court's judgment and vacate NDIC Order No. 33453.

[¶44] Jerod E. Tufte, Acting C.J.
   Daniel J. Crothers
   Jon J. Jensen
   Douglas A. Bahr
   Michael P. Hurly, D.J.

[¶45] The Honorable Michael P. Hurly, District Judge, sitting in place of McEvers, C.J., disqualified.

16